**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SUSAN S. HEARON,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **ASTRAZENECA L.P. and** | : | |
| **ZENECA, INC.,** | : | |
| **Defendants.** | : | **No.    02 - CV - 3189** |
| | : | |

**O R D E R**

AND NOW, this _____ day of _____, 2002, upon

consideration of defendants' Motion to Dismiss or, in the Alternative, to Compel Arbitration and

Stay These Proceedings, and plaintiff's response in opposition thereto, it is ORDERED that the

Motion is DENIED.

BY THE COURT:

_____

R. BARCLAY SURRICK, U.S.D.J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SUSAN S. HEARON,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **ASTRAZENECA L.P. and** | : | |
| **ZENECA, INC.,** | : | |
| **Defendants.** | : | **No.    02 - CV - 3189** |
| | : | |

**PLAINTIFF'S RESPONSE IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS
OR,  IN THE ALTERNATIVE, TO COMPEL
<u>ARBITRATION AND STAY THESE PROCEEDINGS</u>**

For the reasons set forth in the attached Memorandum of Law, plaintiff Susan M. Hearon, by her undersigned counsel, respectfully requests the Court to enter an Order denying Defendants' Motion to Dismiss Or, in the Alternative, to Compel Arbitration and Stay These Proceedings.

Respectfully submitted,

RAYNES, McCARTY, BINDER, ROSS & MUNDY

By: _____
          Harold I. Goodman
          1845 Walnut Street
          20th Floor
          Philadelphia, PA  19103
          (215) 568-6190

          Counsel for Plaintiff Susan S. Hearon

Dated:  August 12, 2002

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SUSAN S. HEARON,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **ASTRAZENECA L.P. and** | : | |
| **ZENECA, INC.,** | : | |
| **Defendants.** | : | **No.     02 - CV - 3189** |
| | : | |

**PLAINTIFF'S MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
OR,  IN THE ALTERNATIVE, TO COMPEL
<u>ARBITRATION AND STAY THESE PROCEEDINGS</u>**

Defendants AstraZeneca L.P. ("AstraZeneca") and Zeneca, Inc. ("Zeneca") have

moved the Court to dismiss this lawsuit or, in the alternative, to compel plaintiff Susan Hearon to

submit all her claims against them to binding arbitration and stay this action in the meanwhile.

Pivotal to the Court's determination of the motion is whether any or all of the three claims

advanced in Ms. Hearon's Complaint are subject to the arbitration provision in her Executive

Change-In-Control Contract ("CIC").  Of the three, two are statutory gender discrimination

claims:  one is a failure to hire claim against AstraZeneca and the other is a claim against both

defendants based on their denial of enhanced severance payments to Ms. Hearon that were

routinely granted to similarly situated male executives.  Clearly, since they are nowhere

mentioned or contemplated by the CIC, those two discrimination claims are not subject to the

CIC's arbitration provision.  The third claim -- for breach of contract regarding the method by

which Ms. Hearon's severance pay was calculated -- is subject to the CIC's arbitration provision.

However, as Chief Judge Giles recently held, where an arbitrable claim is "inextricably

intertwined" with a non-arbitrable civil rights claim -- as is the case here -- "it is appropriate to deny arbitration of any of the claims." *Varallo v. Elkins Park Hospital*, 2002 U.S. Dist. LEXIS 4611 at *15 (E.D.Pa. 2002) ( a copy of *Varallo* is attached to this Memorandum and marked Exhibit A).[1]

## I.

Briefly stated, Ms. Hearon sued AstraZeneca and Zeneca to recover damages on three discrete claims.  In Count I, she pled a claim of sex discrimination under both Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e , *et seq.* ("Title VII"), and the Pennsylvania Human Relations Act, 43 Pa.C.S.A. § 951, *et seq.* ("PHRA"), for the defendants' denial to her of enhanced severance benefits that they routinely granted to similarly situated men.  Significantly, this claim is not based on her CIC contract.  Nor is Count II in which she pled another claim of sex discrimination under both Title VII and the PHRA.  That claim arose out of AstraZeneca's refusal to employ her as its Executive Director for Compensation and Benefits or to provide her with other suitable employment.  In her last claim, Count III of the Complaint, she pled a cause

---

[1]    The CIC itself provides further support for the conclusion that Ms. Hearon's statutory discrimination claims are not arbitrable.  In paragraph 14, captioned **REMEDIES CUMULATIVE; NO WAIVER**, the CIC explicitly preserves any rights or remedies an employee may have outside the context of any "right conferred upon the Employee by this Contract".  Significantly, not a word is mentioned anywhere in the CIC about workplace discrimination or statutory discrimination claims. Consequently, those rights and claims are <u>not</u> waived and thus Ms. Hearon may pursue them in court, or as she did without objection from the defendants in the proceedings before the EEOC and the Pennsylvania Human Relations Commission.

2

of action for breach of contract against both defendants arising out of their refusal to properly

calculate and pay her the amount of severance she was due under Section 2.b(1) of the CIC.[2]

        Defendants' pending motion avers that all three claims are subject to the CIC's

arbitration provision.  They are mistaken.  But before addressing that issue head on, it is first

necessary to put the CIC itself in context since its arbitration provision cannot be read in isolation

of the contract as a whole.[3]  As stated in the Complaint, the CIC "was provided to a number of

key employees and was designed to provide them with designated benefits in the event they lost

their jobs as a result of a merger or other event as defined in the contract."  *Id*. at ¶ 22.  Ms.

Hearon who had been employed by Zeneca and a predecessor since June 1988, *id*. at ¶ 16, was

one of those employees.  *Id*. at ¶ 22.  By May 1998 when she signed her CIC, Ms. Hearon had

risen by dint of her shills and accomplishments to the position of Director, Executive

Compensation and Benefits for Zeneca.  *Id*. at ¶ 19.

        Ms. Hearon's CIC was executed with Zeneca only.  But by its terms it applied to

and was binding on its "successors and assigns."  *See* ¶ 9 of the CIC.[4]  The declared purpose of

---

[2]    On review of defendants' motion to dismiss, the Court must accept as true all the factual allegations contained in the Complaint and draw all reasonable inferences from them in favor of Ms. Hearon. *See*, *e.g.*, *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164 (1993).

[3]    The defendants have attached the CIC to their motion since it is referenced in Ms. Hearon's Complaint. *See id.* at ¶¶ 22 and 30 *et seq.*  We have no objection to its being considered and construed by the Court in its evaluation of the defendants' motion.

[4]    To be bound, the successor was required to "acknowledge expressly that this Contract is binding upon and enforceable against the Employer [*i.e.*, Zeneca] . . . and to become jointly and severally obligated with the Employer to perform this Contract in the same manner and to the same extent that the Employer would be required to perform if no succession or successions had been taken." *See* ¶ 9 of the CIC.  On this record, neither defendant has proffered any evidence that AstraZeneca, as Zeneca's successor, "acknowledge[d] expressly" that it would be bound by the CIC contract.

                                                  (continued...)

the CIC was "to induce the Employee to remain in the employ of the Employer." *Id.* at 1 (third

WHEREAS clause). To accomplish that end, the CIC provided covered employees like Ms.

Hearon with

> terms . . . designed to protect executives against any cutback in
> current levels of compensation and benefits in the event of any
> Change-In-Control . . . by contractually guaranteeing specified
> salary and bonus payments, benefits under medical, life insurance
> and fringe benefits plans, and retirement payments, death,
> disability, welfare, and severance benefits, all of which will be paid
> by the Employer to the Employee or his or her designated
> beneficiaries . . . (second WHEREAS clause).

The terms of the CIC were triggered as a result of the merger in April 1999

between Zeneca Group PLC and Astra AB and the ensuing formation of AstraZeneca.

Complaint at ¶ 23. For several months, Ms. Hearon was employed by AstraZeneca. *Id.* at ¶ 24.

But in late July 1999 she was informed that her position had been eliminated and she was being

terminated from employment effective August 31, 1999. *Id.* at ¶ 25.

## II.

The CIC contains an arbitration provision that, in paragraph 7.b, states in pertinent

part:

> In the event of any dispute, controversy or claim (collectively
> referred to as "claim") arising out of or relating to any provision of
> this Contract or the Employee's Termination upon a CIC, such
> claim shall be settled by arbitration in the City of Philadelphia,
> Pennsylvania, in accordance with the commercial arbitration rules

---

[4](...continued)
Without that evidence, AstraZeneca has no basis upon which to seek dismissal or compel arbitration
of Ms. Hearon's claims. Indeed, paragraph 9 of the CIC states: "Failure of the Employer to obtain
such agreement prior to the effectiveness of any such succession shall be a breach of this Contract."

then in effect of the American Arbitration Association, before a
panel of three arbitrators, two of whom shall be selected by the
Employer and the Employee, respectively, and the third of whom
shall be selected by the other two arbitrators.

Arbitration, therefore, is called into play if there is either a claim "arising out of or

relating to any provision of this Contract or the Employee's Termination upon a CIC." Of Ms.

Hearon's three claims, only her breach of contract claim (Count III of the Complaint) is triggered

by the CIC's arbitration provision. Her "enhanced severance" claim (Count I) has nothing to do

with the CIC itself. Indeed, the Complaint pleads that she was denied enhanced severance

payments that Zeneca and AstraZeneca paid to similarly situated men -- some of whom did have

CIC contracts and others who did not. *See* ¶¶ 34-37 of the Complaint. Not a word in the CIC

contemplates coverage of this claim or the duty to arbitrate it.

The same can be said, albeit in even stronger terms, about Ms. Hearon's failure to

hire claim. It asserts that she and the two other most senior-level women in Zeneca's Human

Resources Department were excluded from any significant role in the critical stages of the

merger process, Complaint at ¶ 24, and that, on account of her gender, she herself was denied

equal treatment and consideration for the position of Executive Director of Compensation and

Benefits for AstraZeneca. *Id*. at ¶ 26. As a result, that job was assigned to a less qualified male

(William McCool) and Ms. Hearon was also denied other suitable jobs and positions for which

she was qualified to perform. *Id*. at ¶¶ 27-29.

The CIC's arbitration provision does not cover this failure to hire claim. Clearly it

does not relate "to any provision of [the CIC] Contract." Nor does it relate to "Employee's

Termination upon a CIC." Thus, much like the plaintiff in *Varallo* (*see* Exhibit A hereto), whose

position was eliminated and her employment terminated and whose request to be rehired was

denied, she cannot be compelled to take her failure-to-hire claim to arbitration.  *Varallo* at *10

("The court finds that plaintiff's failure to hire claims are not within the scope of her employment

contract, and thus not subject to arbitration.")  This conclusion follows ineluctably from the

undisputed proposition that a party "cannot be compelled to submit to arbitration claims that are

not covered by the arbitration agreement."  *Varallo*, *supra*, at *9.  *See also*, *EEOC v. Waffle

House, Inc.*, _____ U.S. _____, 151 L.Ed.2d 755, 766 (2002) ("nothing in the [Federal

Arbitration Act] authorizes a court to compel arbitration of any issues, or by any parties, that are

not already covered in the agreement").[5]


**III.**

      Any doubt whether Ms. Hearon's statutory discrimination claims are outside the

coverage of the CIC's arbitration provision is removed upon a consideration of paragraph 14 of

the Complaint.  Labeled "REMEDIES CUMULATIVE; NO WAIVER", it states:

> No right conferred upon the Employee by this Contract is intended
> to be exclusive of any other right or remedy, and each and every
> such right or remedy shall be cumulative and shall be in addition to
> any other right or remedy given hereunder or now or hereafter
> existing at law or in equity.  (Emphasis added.)

---

[5]   That Ms. Hearon cannot be compelled to take either of her statutory discrimination claims to arbitration is also supported by the fundamental principle holding that an arbitration award must be drawn from "the essence" of the contract being construed.  *See, e.g.*, *United Paperworkers v. Misco*, 484 U.S. 29, 38 (1987) ("the arbitrator's award settling a dispute with respect to the interpretation or application of a [contract] must draw its essence from the contract and cannot simply reflect the arbitrator's own notions of industrial justice").  Here, the defendants cannot validly contend that the CIC empowers the arbitration panel to decide Ms. Hearon's enhanced severance and failure-to-hire claims -- neither of which draws its essence from the CIC.

Oddly, in their rush to compel Ms. Hearon to arbitrate her statutory discrimination claims, the defendants have ignored this provision. Yet ignoring it will not make it go away. By its explicit terms, the no-waiver provision preserves all rights and remedies Ms. Hearon has outside the rights conferred upon her "by this Contract." It bears repeating that the Contract does not mention or contemplate any workplace or statutory discrimination claim. In fact, its purpose is to deal with change-in-control rights and benefits and nothing else. Stated conversely, no Title VII or PHRA right or remedy is implicated by the CIC or its arbitration provision. Those rights and remedies, to again quote from paragraph 14 of the CIC, "are in addition to any other right or remedy given hereunder [*i.e.*, under the CIC]." It follows that since Ms. Hearon's statutory rights and remedies lie outside the CIC, she cannot be compelled to arbitrate them. *Accord First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("Courts should not assume the parties agreed to arbitra[tion] unless there is clear and unmistakabl[e] evidence that they did so") (inside quotation and citation omitted). *See also Battaglia v. McKendry*, 233 F.3d 720, 724 (3d Cir. 2000) (same).

## IV.

There remains but one question to resolve, *i.e.*, whether Ms. Hearon's two non-arbitrable statutory discrimination claims are "inextricably intertwined" with her arbitrable breach of contract claim. The answer to that question is affirmative just as Chief Judge Giles concluded in *Varallo*. There, like here, the plaintiff's failure-to-hire claim arose at or about the same time her position was eliminated and her employment was terminated. Her termination claim was found to be arbitrable; her failure-to-hire claim was not. But since the two claims

7

arose at or about the same time and overlapped one another -- as is the case here -- the Court found them to be "inextricably intertwined." *Id*. at *10-*15.  As such, Ms. Varallo's non-arbitrable civil rights claim was deemed to "trump[ ]" her arbitrable claim.  *Id*. at *15.  Exercising his discretion, Chief Judge Giles therefore concluded that piecemeal litigation of Ms. Varallo's claims -- in court and separately in arbitration -- was not appropriate.  All her claims, the Court held, should be litigated in court.  *Ibid*.  The same result should apply here.

## <u>CONCLUSION</u>

For the reasons stated, defendants' motion should be denied and all of Ms.

Hearon's claims should be litigated in this Court.

Respectfully submitted,

RAYNES, McCARTY, BINDER, ROSS & MUNDY

By:_____
        Harold I. Goodman
        1845 Walnut Street
        20th Floor
        Philadelphia, PA  19103
        (215) 568-6190

        Counsel for Plaintiff Susan S. Hearon

Dated:  August 12, 2002

9

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing Plaintiff's Response and Memorandum of Law in Opposition to Defendants' Motion to Dismiss Or, in the Alternative, to Compel Arbitration and Stay These Proceedings has been served by hand delivery on the following defense counsel:

Sandra A. Girifalco, Esquire
Ellen Rosen Rogoff, Esquire
Melissa C. Angeline, Esquire
Stradley Ronon Stevens & Young, LLP
2600 One Commerce Square
Philadelphia, PA 19103
**Counsels for Defendants AstraZeneca LP and Zeneca Inc.**

_____
Harold I. Goodman

Dated:   August 12, 2002