**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**


| | | |
|---|---|---|
| **SUSAN S. HEARON** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **ASTRAZENECA LP and ZENECA INC.** | : | **NO. 02-3189** |


**M E M O R A N D U M  &  O R D E R**

SURRICK, J.                                                                          **March 24, 2003**

Plaintiff Susan S. Hearon ("Plaintiff") brought this action against Defendants

AstraZeneca LP and Zeneca Inc. (collectively "Defendants") to recover damages on three claims:

(1) sex discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and

the Pennsylvania Human Relations Act ("PHRA") arising out of Defendants' alleged failure to

pay her enhanced severance payments and benefits granted to similarly situated male executives

upon her termination as an employee of Zeneca Inc.; (2) sex discrimination in violation of Title

VII and the PHRA arising out of Defendants' alleged failure to employ her as Executive Director

of Compensation and Benefits or other suitable employment, which resulted in her termination as

an employee of Zeneca Inc.; and (3) breach of contract for alleged failure to properly calculate

and pay her the correct amount of severance pay due to her upon her termination under the terms

of her Change-In-Control contract with Zeneca Inc.  Presently before the Court is Defendants'

Motion to Dismiss Plaintiff's Claims or, in the Alternative, to Compel Arbitration and Stay

These Proceedings (the "Motion," Docket No. 2).  For the reasons that follow, the Motion will be

granted, and Plaintiff's claims will be dismissed.

# I.    STATEMENT OF FACTS

The following facts are alleged in Plaintiff's Complaint.  For purposes of this Motion they are accepted as true.

Plaintiff became employed as a Senior Business Systems Analyst by a predecessor of Defendant Zeneca Inc. in June 1988.  (Compl. ¶ 16.)  Prior to this employment, she had worked as both a benefits and a general accounting manager for eight years at Thomas Jefferson University, and then as a consultant for the Johnson Companies and Towers Perrin.  Id. ¶ 15. Between 1988 and 1998, Defendant Zeneca Inc. promoted Plaintiff three times.  In 1998 she reached the position of Director, Executive Compensation and Benefits.  Id. ¶ 17.  She received excellent performance reviews and increases in her salary throughout this time period.  Id. ¶ 18.

When Plaintiff was promoted to the position of Director, she was assigned to Salary Grade 40 by Defendant Zeneca Inc.  Her male predecessor in the position had been assigned Salary Grade 41.  (Compl. ¶ 19.)  Plaintiff alleges that the only reason for the salary discrepancy was her gender.  Id. ¶ 20.

In May 1998, Plaintiff signed an Executive Change-In-Control Contract ("CIC Contract") with Zeneca Inc. that was designed to provide certain key employees with designated benefits in the event that they lost their jobs as a result of a merger or other triggering event as defined in the contract.  Id. ¶ 22.  The CIC Contract contains an arbitration provision, which provides in pertinent part:

> In the event of **any dispute, controversy or claim** (collectively referred to as "claim") **arising out of or relating to** any provision of this Contract or **the Employee's Termination upon a CIC**,

2

> such claim **shall be settled by arbitration** in the City of
> Philadelphia, Pennsylvania, in accordance with the commercial
> arbitration rules then in effect of the American Arbitration
> Association . . . .   (emphasis added)

(CIC Contract ¶ 7.b.).  The CIC Contract also defines the term "Involuntary Termination" as

"action of the employer on account of . . . (1) permanent layoff; (2) reduction in force; (3) job

elimination."  (CIC Contract ¶ 1.n.).  Finally, the CIC Contract contains a choice of law clause

which provides:  "This Contract shall be governed by and interpreted under the laws of the State

of Delaware without giving effect to any conflict of laws provisions."  (CIC Contract ¶ 11.)

In April 1999, Zeneca Inc. merged its pharmaceutical business, Zeneca Group PLC, with

Astra AB to form a new entity, AstraZeneca LP.  (Compl. ¶¶ 7, 23.)  Plaintiff retained her job for

several months after the merger, but did not receive a significant role in any of the merger or

consolidation activities between the two companies.  Plaintiff claims that due to her gender,

AstraZeneca denied her equal treatment and consideration for the position of Executive Director

of Compensation and Benefits despite being more qualified than the male candidate who was

chosen for the position in June 1999.  Id. ¶¶ 26-28.  She further alleges that on account of her

gender, she was denied other suitable positions at AstraZeneca for which she was qualified.  Id. ¶

30.

On July 29, 1999 the new Executive Director of Compensation and Benefits informed

Plaintiff that her position had been eliminated and she was being terminated from employment as

of August 31, 1999.  (Compl. ¶ 25.)  Her termination triggered the provisions of her CIC

Contract with Zeneca Inc.  Id. ¶ 30.

Plaintiff claims that Defendants breached their CIC Contract with her by failing to

properly calculate her severance payment according to the contract's terms, and by refusing to correct the amount of the severance payment. (Compl. ¶¶ 31-33.) She further alleges that Defendants refused to compensate her with enhanced severance benefits and payments, despite having compensated four similarly situated males with such benefits. Id. ¶¶ 34-35. In addition, Plaintiff claims that significant termination payments and benefits outside the context of the CIC Contract—such as enhanced pension benefits and severance payments, termination bonuses, payment of car loans, estate planning and tax preparation services, and continued medical coverage and Medicare supplemental payments—were paid to five male executives, among others, but not to Plaintiff or any other terminated female executive. Id. ¶¶ 36-37.

Plaintiff alleges that as a result of Defendants' breach of contract and knowing, reckless, and willful violation of her rights under Title VII and the PHRA, she has suffered a substantial loss of wages, severance pay, and other benefits to which she otherwise would have been entitled. (Compl. ¶¶ 38, 40.) She further claims that she has suffered physical pain and suffering, emotional distress, humiliation, loss of confidence and self-esteem, and loss of enjoyment of life's pleasures. Id. ¶ 39.

## II.    NATURE AND STAGE OF PROCEEDING

Plaintiff filed her three-count complaint on May 23, 2002 (the "Complaint"). Count I alleges sex discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Pennsylvania Human Relations Act ("PHRA") arising out of Defendants' alleged failure to pay, upon her termination as an employee of Zeneca Inc., enhanced severance payments and benefits granted to similarly situated male executives. Count II alleges sex discrimination in violation of Title VII and the PHRA arising out of Defendants' alleged failure to give her the

4

position of Executive Director of Compensation and Benefits or other suitable employment,

which resulted in her termination as an employee of Zeneca Inc. Count III alleges breach of

contract for alleged failure to properly calculate and pay her the correct amount of severance pay

due to her upon her termination under the terms of her Change-In-Control contract with Zeneca

Inc.

Defendants have filed this Motion to Dismiss Plaintiff's Claims, or in the Alternative, to

Compel Arbitration and Stay These Proceedings, arguing that under the terms of the CIC

Contract, arbitration is the exclusive remedy for all three of Plaintiff's claims. Defendants have

moved to dismiss or stay this proceeding in favor of arbitration. Defendants' Motion is premised

upon the arbitration provision recited above, which also states that "[t]his arbitration provision

shall be specifically enforceable." (CIC Contract ¶ 7.b.). Defendants contend that all of

Plaintiff's claims in the instant action are subject to arbitration and that this proceeding must be

dismissed or stayed pursuant to both the Federal Arbitration Act, 9 U.S.C.A. §§ 1-14, and

Delaware's Uniform Arbitration Act, 10 Del. C. §§ 5701-25. Plaintiff contends that the claims in

Counts I and II of the complaint are not within the scope of the arbitration clause. Plaintiff

contends that because the CIC Contract does not specifically mention such claims, they do not

fall within the scope of the arbitration clause. We disagree.

## III.    STANDARD

The FAA "creates a body of federal substantive law establishing and regulating the duty

to honor an agreement to arbitrate . . ." John Hancock Mutual Life Ins. Co. v. Olick, 151 F.3d

132, 136 (3rd Cir. 1998) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460

U.S. 1, 25 n.32 (1983)). It was enacted to "reverse centuries of judicial hostility to arbitration

5

agreements by placing arbitration agreements upon the same footing as other contracts." <u>Pritzker v. Merrill Lynch</u>, 7 F.3d 1110, 1113 (3d Cir. 1993).  Applying to written arbitration provisions contained in any contract evidencing a transaction involving interstate or foreign commerce, 9 U.S.C. §§ 1, 2, the FAA requires that agreements to arbitrate be enforced to the same extent as other contracts. 9 U.S.C. §§ 1, 2; <u>Harris v. Greentree Financial Corporation</u>, 183 F.3d 173 (3d Cir.1999); <u>John Hancock</u>, 151 F.3d at 137.

The FAA applies quite broadly to any "written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy arising out of such contract or transaction." 9 U.S.C.A. § 2.  <u>See</u> <u>also</u> <u>Roadway Package System, Inc. v. Kayser</u>, 257 F.3d 287, 291-92 (3d Cir. 2001) (noting breadth of FAA).  The FAA's reach extends "to the limits of Congress' Commerce Clause power[ ]." <u>Allied-Bruce Terminix Companies, Inc. v. Dobson</u>, 513 U.S. 265 (1995).  In particular, the Supreme Court has found that the FAA covers all employment contracts with the exception of transportation workers' employment contracts. <u>Circuit City Stores, Inc. v. Adams</u>, 532 U.S. 105, 109 (2001).  Since the parties' CIC Contract was an employment contract that addressed the compensation and benefits Plaintiff would receive in the event of her termination subsequent to a Change in Control of her employer, the CIC Contract falls under the governance of the FAA.[1]

---

[1]We note that Plaintiff does not dispute the applicability of the FAA. We also note that the similarity between Delaware's Uniform Arbitration Act and the FAA, both in terms of plain language and the policy goals behind each statute, is so strong that the analysis would not change upon an application of Delaware law instead of federal law.  The language of both the federal and Delaware arbitration statutes states that arbitration provisions are "valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C.A. § 2; 10 Del. C. § 5701.  The Delaware statute also applies to contracts in the employment context.  10 Del. C. § 5701.

Furthermore, Delaware courts have found that the policy behind the Delaware Uniform

Before ordering arbitration, the FAA requires a court to make the following threshold determinations:  (1) whether the parties entered into a valid arbitration agreement, and (2) whether the specific dispute falls within the scope of that agreement.  John Hancock, 151 F.3d at 137 (explaining that "district courts need only engage in a limited review to ensure that the dispute is arbitrable").

## IV.    ANALYSIS

### A.    The CIC Contract's Arbitration Provision is Valid.

Our first point of inquiry is whether the parties have entered into a valid arbitration agreement.  Arbitration agreements are enforceable "save upon such grounds as exist at law or equity for the revocation of any contract," 9 U.S.C. § 2 (1994), or unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue, Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628 (1985).  "In conducting [a] limited review, the court must apply ordinary contractual principles, with a healthy regard for the strong federal policy in favor of arbitration." John Hancock, 151 F.3d at 137 (citing Moses H. Cone, 460 U.S. at 24).  "Nothing short of a showing of fraud, duress, mistake or some other ground recognized by the law applicable to contracts" provides a basis for a federal court to find an arbitration clause invalid.  Seus v. John Nuveen & Co., 146 F.3d 175, 185 (3d. Cir. 1998), cert. denied, 525 U.S. 1139 (1999).  Because "arbitration is a creature of

---

Arbitration Act mirrors that of the federal statute.  See, e.g., Elf Atochem North America, Inc. v. Jaffari, 727 A.2d 286, 292 (Del. 1999) (recognizing the Delaware policy favoring alternate dispute resolution mechanisms, including arbitration); SBC Interactive, Inc. v. Corporate Media Partners, 714 A.2d 758, 761 (Del. 1998) ("We begin our analysis with the premise that the public policy of Delaware favors arbitration . . . . Any doubt as to arbitrability is to be resolved in favor of arbitration.").

contract, courts have long since drawn the conclusion that, as a matter of contract, no party can be forced to arbitrate an issue unless that party has entered into an agreement to do so." John Hancock, 151 F.3d at 137 (citing AT & T Technologies v. Communications Workers of Am., 475 U.S. 643, 648 (1986)).

Here, Plaintiff does not contest the validity of the arbitration clause. Nor does Plaintiff argue that its application to her claims has been precluded by Congress.[2] In fact, Plaintiff has herself assumed the validity of the arbitration clause. Count III of her Complaint specifically seeks relief pursuant to the terms of the contract, and Plaintiff's submissions concede that the claim made in Count III is subject to arbitration pursuant to the arbitration clause in the CIC Contract. Clearly, Plaintiff and Defendant entered into a valid arbitration agreement.

  B.    Plaintiff's Claims Fall Within the Scope of the Arbitration Clause.

      *1.    The Arbitration Clause Must Be Construed Broadly.*

The CIC Contract entered into by Hearon and Defendant Zeneca Inc. provides that any claim "arising out of or relating to any provision of this Contract or the Employee's Termination upon a CIC . . . shall be settled by arbitration." (CIC Contract ¶ 7.b.). Courts have determined that an arbitration clause "is characterized as narrow when the language of the clause requires the arbitration of disputes 'arising out of' the agreement." However, an arbitration clause that uses "language such as 'any dispute that arises out of or relates to' the agreement, or disputes that are 'in connection with' the agreement" is characterized as broad. Coffman v. Provost*Umphrey

---

[2]We note that the Third Circuit has found that Title VII claims may fall within the scope of arbitration agreements under the FAA. Seus v. Nuveen & Co., 146 F.3d 175, 182 (3d Cir. 1998) ("We find Title VII entirely compatible with applying the FAA to agreements to arbitrate Title VII claims.").

Law Firm, L.L.P., 161 F. Supp. 2d 720, 725 (E.D. Tex. 2001).  See also Elf Atochem North

America, Inc. v. Jaffari, 727 A.2d 286, 294 (Del. 1999) (broadly construing language requiring

that *"any* claim arising out of or related to this Agreement" must be arbitrated); Parfi Holding AB

v. Mirror Image Internet, Inc., 794 A.2d 1211 (Del. Ch. 2001) (drawing a distinction between

arbitration clauses that limit language to disputes "arising out of" an agreement—and thus

limiting arbitration to disputes directly under the contract—and contracts where parties have

chosen to draft additional language such as "in connection with" in an effort to broaden the scope

of the agreement).  Moreover, other courts have found that a broadly worded arbitration clause,

such as the one at issue here, govern disputes beyond those that involve the terms of the contract

in which the arbitration clause appears.  See Gateson v. ALSK-Bank N.V./CGER-Banque S.A.,

No. 94 Civ. 5849, 1995 WL 387720, *3-5 (S.D.N.Y. June 29, 1995) (holding that an arbitration

provision in an employment agreement which required that "[a]ny controversy arising out of or

relating to" the agreement extended to plaintiff's statutory discrimination claims not specifically

addressed in the employment agreement); Hull v. NCR Corp., 826 F. Supp. 303, 305 (E.D. Mo.

1993) (finding that an employment contract requiring arbitration of  "[a]ny controversy or claim

arising out of relating to" the contract must be liberally construed to encompass statutory

employment discrimination claims); Labib v. Younan, 755 F. Supp. 125, 128-129 (D.N.J. 1991)

(finding that a plaintiff's claims for breaches of oral agreements and fair dealing, the tort of

fraudulent inducement, and statutory violations were all encompassed by the parties' broadly-

worded employment contract, which mandated arbitration for "[a]ny controversies or

disagreements arising out of, or relating to this Agreement or the breach thereof")[3].  See also

Cara's Notions, Inc. v. Hallmark Cards, Inc., 140 F.3d 566, 569-571 (4th Cir. 1998) (finding that

an account agreement which mandated arbitration for "[a]ny controversy or claim arising out of

or relating to . . . any aspect of the relationship" between the parties required arbitration of all

conflicts between the parties, and not merely disputes regarding the account agreement); Cash

Converters USA, Inc. v. Burns, Civ. A. No. 99-0146, 1999 WL 98345, *6-7 (N.D. Ill. Feb. 19,

1999) (finding that an arbitration clause in a contract which required arbitration of all disputes

arising out of the parties' relationship encompassed claims beyond the terms of the contract in

which the arbitration clause appeared).  In the instant case, the breadth of the language of the

arbitration clause establishes that it was intended to apply to all disputes related to Plaintiff's

termination upon a Change-in-Control, and not merely to disputes relating to the specific

provisions within the CIC Contract.

> 2.    *Each of Plaintiff's Claims Falls Within the Arbitration Clause's Broad*
>       *Language.*

"In determining arbitrability, the courts are confined to ascertaining whether the dispute is

---

[3]Although the court in Labib ultimately found that the plaintiff's statutory claims were not
arbitrable due to public policy considerations despite finding that the arbitration clause was
written broadly enough to encompass all of plaintiff's claims, the Supreme Court has
subsequently ruled that "statutory claims may be the subject of an arbitration agreement,
enforceable pursuant to the FAA."  Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26
(1991).  Moreover, since the Labib decision, as noted earlier, the Third Circuit has found that
Title VII claims may fall within the scope of arbitration agreements under the FAA.  Seus v.
Nuveen & Co., 146 F.3d 175, 182 (3d Cir. 1998) ("We find Title VII entirely compatible with
applying the FAA to agreements to arbitrate Title VII claims.").  See also Bleumer v. Parkway
Ins. Co., 649 A.2d 913, 921-923 (N.J. Super. 1994) (calling into question the validity of Labib's
holding that public policy considerations would bar arbitration of a plaintiff's statutory claim
given the Supreme Court's subsequent ruling in Gilmer, and noting that, in any event, Labib's
public policy grounds for declining to compel arbitration, which were based on state law,  were
preempted by the FAA).

one that, on its face, falls within the arbitration clause of the contract." SBC Interactive, Inc. v. Corporate Media Partners, 714 A.2d 758, 761 (Del. 1998). Moreover, "when a court interprets such provisions in an agreement covered by the FAA, due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 62 (1995) (citations omitted). Arbitration should be ordered "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." AT & T Technologies, 475 U.S. at 650. Under all of the circumstances we are satisfied that each of Plaintiff's claims falls within the scope of the CIC Contract's arbitration clause.

a.    *Count I*

Plaintiff's first claim states: "By failing and/or refusing to pay Ms. Hearon the enhanced severance payments and benefits that they granted to similarly situated male executives, defendants violated Section 703(a)(1) of Title VII, 42 U.S.C.A. § 200e-2(a)(1) and Section 5(a) of the [Pennsylvania Human Relations Act], 43 Pa. C.S.A. § 955(a)." (Compl. ¶ 42.) This claim refers to benefits Plaintiff believes she was entitled to upon her termination, which all parties agree resulted from a change in control due to the merger of Zeneca Group PLC and Astra AB. As such, it falls within the broad reach of the arbitration provision, which requires that all disputes related to the employee's termination upon a change in control be arbitrated.

Despite the breadth of the language in the arbitration clause, Plaintiff argues that her claim for enhanced severance benefits had nothing to do with the CIC Contract itself[4], and that

---

[4]Plaintiff notes that some of the similarly situated men did not have CIC Contracts. ( Pl. Resp. at 5; Compl. ¶¶ 34-37.)

the scope of the arbitration clause does not include anything other than disputes involving the specific language of the CIC Contract. (Pl. Resp. at 5.) Such an interpretation[5] ignores the language of the clause, which extends the scope of arbitration beyond the limits of the CIC Contract itself to include any dispute related to Plaintiff's termination upon a Change-in-Control.

Even assuming, *arguendo*, that the scope of the arbitration clause was ambiguous, we would nevertheless be bound by the FAA to resolve any ambiguities in favor of arbitration, Mastrobuono, 514 U.S. at 62 (citations omitted), "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." AT & T Technologies, 475 U.S. at 650. Here, the breadth of the arbitration clause is certainly susceptible to an interpretation that a dispute regarding benefits awarded upon termination due to a change in control "aris[es] out of or relat[es] to . . . Employee's Termination upon a CIC." We reject any argument to the contrary.

        b.    *Count II*

Plaintiff's second claim is that Defendants engaged in sex discrimination in violation of Title VII and the PHRA arising out of Defendants' alleged failure to employ her after a change in control as Executive Director of Compensation and Benefits or other suitable employment, which resulted in her termination as an employee of Zeneca Inc. (Compl. ¶ 44.) Here again, such a claim "relat[es] to . . . Employee's Termination upon a CIC," since it involves allegations of a failure to employ Plaintiff in a suitable position after the merger, and her termination upon a change in control. Accordingly, this Court finds that the scope of the CIC Contract's arbitration

---

[5]We note that Plaintiff has failed to provide any supporting legal authority for this position.

clause covers Plaintiff's second claim.[6]

      c.    *Count III*

Plaintiff's third claim is for breach of contract for alleged failure to properly calculate the correct amount of severance pay due to her upon her termination under the terms of her Change-In-Control contract with Zeneca Inc. (Compl. ¶¶ 46-49.) As mentioned above, Plaintiff does not dispute that this claim is arbitrable under the CIC Contract's arbitration provision. (Pl. Resp. at 5).

      3.    *The CIC Contract's Cumulative Remedies Clause Does Not Permit Either Party to Circumvent the Arbitration Provision.*

Plaintiff also argues that the CIC Contract's cumulative remedies clause prevents her

---

[6]    Based upon <u>Varallo v. Elkins Park Hospital</u>, No. 01-785, 2002 WL 437956 (E.D. Pa. Mar. 19, 2002), Plaintiff argues that she cannot be compelled to arbitrate this second claim, which she characterizes as a "failure to hire" claim. <u>Varallo</u> is inapposite. In <u>Varallo</u>, the plaintiff filed an action against her former employer alleging wrongful termination and failure to hire in violation of federal and state statutes, and defendants responded with a motion seeking an order to arbitrate. <u>Varallo</u>, 2002 WL 437956, at *1. The Defendant's employee handbook included a clause which required employees to submit to arbitration "all disputes relating to or arising out of an employee's employment with the company or the termination of employment. . . ." <u>Id.</u> In evaluating the motion, the court held that Varallo's failure to hire claims were outside the scope of her employment contract since she was no longer an employee of the defendant. <u>Id.</u> at *4. Plaintiff argues that since her second claim amounts to a failure to hire claim, we should be guided by <u>Varallo</u>.

    The facts here are distinguishable from those in <u>Varallo</u>. Varallo's failure to hire claim was based on events that occurred after her termination. Varallo was not required to arbitrate her failure to hire claims because "[n]othing in the employment agreement [could] be construed to bind plaintiff past the termination of her employment." <u>Id.</u> at *4. The <u>Varallo</u> court explained that to hold her to the employment contract regarding a dispute that occurred after her termination of employment would put her in a worse position for failure-to-hire purposes than other applicants who had never worked for defendants and would therefore not ever be subject to the Employee Handbook's arbitration provision. <u>Id.</u> In contrast, Ms. Hearon's sex discrimination claim does not arise out of efforts to obtain a position after she was terminated; rather, they are based on events that occurred while an employee for Defendants but which led to her termination. Broadly construing the CIC Contract's arbitration provision, they therefore "aris[e] out of or relat[e] to . . . Employee's Termination upon a CIC."

from being compelled to arbitrate her first two claims.  The cumulative remedies clause reads:

> REMEDIES CUMULATIVE; NO WAIVER.  No right conferred upon the Employee by this Contract is intended to be exclusive of any other right or remedy, and each and every such right or remedy shall be cumulative and shall be in addition to any other right or remedy given hereunder or now or hereafter existing at law or in equity.  No delay or omission by the Employee in exercising any right, remedy or power hereunder or existing at law or in equity shall be construed as a waiver thereof, including without limitation any delay by the Employee in delivering a notice of Constructive Termination pursuant to Section 1.h. hereof after an event has occurred which would, if the Employee had resigned, have constituted a Termination pursuant to Section 1.u. of this Contract.

(CIC Contract ¶ 14).  Plaintiff contends that this provision preserves her right to seek adjudication in court rather than through arbitration.  (Pl. Resp. at 7).

It is a generally recognized principle of contract interpretation that specific and exact terms are given greater weight than general language, and efforts should be made to interpret conflicting clauses in a way that attributes meaning to both clauses.  See, e.g., Restatement (2d) of Contracts § 203(c) & comment e ("[I]n case of conflict the specific or exact term is more likely to express the meaning of the parties with respect to the situation than the general language.  If the specific or exact can be read as an exception or qualification of the general, both are given some effect. . . .").  See also Coca-Cola Bottling Company of Elizabethtown, Inc. v. The Coca-Cola Company, 654 F. Supp. 1419, 1441 (D. Del. 1987) ("[General] recitals are not a necessary part of a contract and can only be used to explain some apparent doubt with respect to the intended meaning of the operative or granting part of the instrument . . . .").

Consistent with this general principle, we read the instant arbitration clause and the cumulative remedies clause jointly, so as to give both clauses meaning.  A joint interpretation of

these provisions preserves any remedies available to Plaintiff under the law pursuant to the

cumulative remedies clause, but also requires her to seek arbitration as the method for

adjudicating any claims that fall within the scope of the arbitration clause.

## V.    CONCLUSION

Based upon the foregoing, we will grant Defendants' Motion, and dismiss this action in

its entirety.  Seus v. John Nuveen Co., Inc., 146 F.3d 175, 179 (3d Cir. 1998) (acknowledging

that where all claims in an action are arbitrable, the district court may dismiss the action).

An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SUSAN S. HEARON** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **ASTRAZENECA LP and  ZENECA INC.** | : | **NO. 02-3189** |

**O R D E R**

AND NOW, this 24th  day of March, 2003, upon consideration of Motion of Defendants

AstraZeneca LP and Zeneca Inc. to Dismiss Plaintiff's Claims or, in the Alternative, to Compel

Arbitration and Stay These Proceedings (Doc. No. 2), and all papers filed in support thereof or in

opposition thereto, it is hereby ORDERED as follows:

1) The Motion (Doc. No. 2) is GRANTED;

2) Plaintiff's Complaint (Doc. No. 1) is DISMISSED; and

3) The Parties are directed to proceed to Arbitration.

IT IS SO ORDERED.


BY THE COURT:


_____
R. Barclay Surrick, Judge